UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DREMARIS JACKSON,

       Petitioner,                          Case Number 11-CV-14338
                                                          Honorable George Caram Steeh

v.

CARMEN PALMER,

       Respondent.
_____/

## OPINION AND ORDER DENYING THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner Dremaris Jackson's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Wayne Circuit Court after a jury trial of first-degree murder, MICH. COMP. LAWS § 750.316, and commission of a felony with a firearm. MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to life imprisonment for the murder conviction, to be served consecutively with a two-year term for the firearm conviction. The petition claims that: (1) insufficient evidence was presented at trial to show that Petitioner caused the victim's death; (2) Petitioner's trial counsel was ineffective for failing to present an intervening cause of death defense; (3) the trial court failed to properly instruct the jury on the element of intent; (4) the trial court erred in instructing the jury regarding evidence of Petitioner's flight; and (5) cumulative error denied Petitioner his right to a fair trial. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

Petitioner's conviction arises from a botched car-jacking in which the victim, sixty-one year old Paul Singleton, was killed.

The evidence presented at trial showed that the victim was seated in his parked car in a gas station parking lot. An eyewitness, Kenneth Lewis, was walking in front of the car. He saw two men who had just emerged from a green van approach Singleton's car. The shorter of the two men tapped a handgun on the side window of the car. Lewis went into the station and told the clerk to call 9-1-1.

From inside the station, Lewis saw the victim struggle for control of the gun. The man fired the gun several times, but the victim managed to close his car door. Meanwhile, the taller man ran in front of the victim's car and fired shots through the windshield. The two men then got back in their van and drove off. The victim, meanwhile, also drove off at a high rate of speed.

Within a half-mile of the station, Singleton crashed into a tree. An eyewitness to the crash testified that it looked like he was going "about a hundred miles an hour" before his car jumped the curb.

Singleton had been shot twice in the lower leg. Neither bullet hit any bone or major artery, but both caused bleeding that if left untreated were potentially fatal. The injuries from the crash, however, were much more serious. His liver was lacerated and he had completely bit through his tongue. Singleton had no pulse at the scene.

The Michigan State Police produced enhanced still photos taken from the gas station security camera. The photos were disseminated to the media, and as a result, police got tips that identified Petitioner as one of the gunmen.

Thirteen days after the incident, Lewis identified Petitioner from a photographic array as the shorter man who stood on the side of the victim's car. Months later, Lewis identified a photograph of Petitioner's accomplice.

Petitioner was arrested, and he waived his rights and gave a statement to police. In the statement, Petitioner admitted his involvement, but claimed that he acted under duress:

> Q: Tell me about the fatal shooting of Paul Singleton that occurred on 5-19-08 at 12:30 a.m.
>
> A: I rode to the west side with Quan [Quantrez Sawyer] and Ralph [Rafael Bass]. We went over there to drop off some food at Quan's baby mama's house. We pulled into the gas station at Greenfield and Six Mile. I was sitting in the front passenger seat. Quan was driving and Ralph was sitting in the back behind Quan. Myself and Ralph got out the car. We were walking towards the entrance to the gas station door. Ralph said: "Wait, hold on, I want to talk to you." He said: "We about to rob this dude."
>
> Q: Where was the dude you were about to rob?
>
> A: He was sitting in his car in front of the gas station. His car was facing Greenfield. When I first saw him, he was putting something in his trunk. Then he got into his car.
>
> Q: Continue.
>
> A: I didn't want to do it. Ralph pulled out a nine-millimeter. I walked towards the driver's door. I saw Ralph open the passenger door. Then I opened the driver's door. Then Ralph pointed the gun at the man telling him to get out. I started to tussle with the man trying to pull him out the car. Then the guy was telling Ralph, "Don't shoot me, I ain't got nothing." I reached over the man and tried to unbuckle the seat belt but I couldn't. Then I saw the man reach to put the car in drive at that time. At that time Ralph had come around to the driver's side of the car. As soon as the guy hit the gas, I spin off, I ran. Ralph was still standing there and he started shooting into the car. The man took off on Six Mile. I kept running.
>
> Q: What happened to Quan?
>
> A: I didn't see where he was.
>
> Q: What happened to Ralph after he fired shots?

A: I don't know but a short time later Ralph and Quan picked me up on some side street.

Q: How many shots did Ralph fire?

A: The first time, two shots. Then I heard more shots. I saw him shooting at the window of the man's car.

Q: What kind of truck were you in?

A: A burgundy Durango; it was Quan's.

Q: Did you shoot at the man in the car?

A: No, sir.

Q: Did you have a gun?

A: No, sir.

Q: What were you wearing?

A: A white blazer and a blue D cap, black jeans and black and gray shoes.

Q: What was Ralph wearing?

A: A black fitted cap, a red Pelee jacket, black jeans and gray/white shoes.

Q: What did Quan do?

A: He didn't do nothing. He was the driver.

Q: Did he know there was going to be a robbery?

A: I don't know.

Q: How long have you known Ralph?

A: Thirteen years.

Q: Describe Quan.

> A: Black male, 25, six-one, 200, brown-skinned, short, low-cut hair. I don't know where he lives.

T 10-29-08, 115-117.

Petitioner further claimed that Bass would have shot him if he did not go along with the robbery attempt. Bass, on the other hand, told police that Petitioner was the instigator, and he was an unarmed bystander. Quantrez Sawyer, the driver, confirmed that he drove Petitioner and Bass to the gas station, dropped them off, and then drove away with them about five minutes later when they came running back.

After arguments, instructions, and deliberations, the jury found Petitioner guilty of second-degree murder, first-degree felony-murder, armed robbery, and felony-firearm. Petitioner was sentenced as indicated above.

Petitioner then filed a claim of appeal in the Michigan Court of Appeals. He was appointed appellate counsel who filed an appellate brief that raised the same claims that Petitioner presents in the current petition.

The Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions. *People v. Jackson*, No. 289875 (Mich. Ct. App. May 6, 2010). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, raising the same issues. The Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Jackson*, 488 Mich. 872 (2010)(table).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if

he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The

Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

**A. Sufficiency of the Evidence**

Petitioner asserts that insufficient evidence was presented at trial to sustain his murder conviction. Specifically, Petitioner challenges the sufficiency of the evidence offered to show that

he caused the victim's death. Respondent asserts that the Michigan Court of Appeals decision rejecting this claim on the merits was not objectively unreasonable.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so

-8-

insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson,* 132 S.Ct. 2060, 2065 (2012).

Here, the Michigan Court of Appeals decided Petitioner's claim against him on the merits as follows:

> Jackson first argues that the victim's grossly negligent driving caused the car crash that resulted in his death. We disagree. As addressed above, there is sufficient evidence to show that Jackson's involvement in the shooting of the victim, like Bass's involvement, was the factual and proximate cause of the victim's death.

*People v. Jackson*, 2010 WL 18187362, *3 (Mich. App. May 6, 2010).

As to Bass' identical challenge, the Michigan Court of Appeals held:

> A challenge to the sufficiency of evidence is reviewed by this Court de novo. *People v. Cline*, 276 Mich. App. 634, 642 (2007). We must "'view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.'" *Id*., *quoting People v. Wolfe*, 440 Mich. 508, 515, amended 441 Mich. 1201 (1992).
>
> The elements of first-degree felony murder are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MICH. COMP. LAWS 750.316(1)(b)," here robbery. *People v. Smith*, 478 Mich. 292, 318-319 (2007) (internal quotations and citations omitted).
>
> To prove causation in a criminal case, the defendant's conduct must be both the factual cause and the proximate cause of the result. *People v. Schaefer*, 473 Mich. 418, 435(2005), *overruled in part on other grds People v. Derror*, 475 Mich. 316. Factual causation is established if the result would not have occurred "but for" the defendant's conduct. *Schaefer*, 473 Mich. at 435-436. Proximate cause is established if the victim's injury is a "direct and natural result" of the defendant's conduct. *Id*. at 436. However, if there was an intervening cause that superseded the defendant's conduct, then the causal link between the defendant's conduct and the victim's injury is broken, and the defendant's conduct is not deemed to be the proximate cause. *Id*. at 436-437.

>An intervening cause supersedes a defendant's conduct as the proximate cause if it was not reasonably foreseeable. *Derror*, 475 Mich. at 437-438. Although "an act of God or the gross negligence or intentional misconduct by the victim or a third party will generally be considered a superseding cause, ordinary negligence by the victim or a third party will not be regarded as a superseding cause because ordinary negligence is reasonably foreseeable." *Id*. at 438-439 (emphasis in original).
>
>In this case, there is no dispute that Bass's conduct was the factual cause of the victim's death because there is evidence that Bass was one of the shooters and the victim would not have driven away at a high rate of speed and crashed had he not been shot. In addition, Bass's conduct was the proximate cause of the victim's death because it was the direct and natural result of Bass's conduct. The victim driving his car away at a high rate of speed and crashing into a tree is not an intervening cause that severs the causal link. It was reasonably foreseeable that, after being shot twice in the leg while in the driver's seat of his car, the victim would try to quickly get away from his assailants to either escape or seek medical attention. His ability to maneuver the car would have been hampered by his wounds and the fact that the windshield had been shattered by gunfire. As a result, it was reasonably foreseeable that the victim would lose control of his vehicle and crash.
>
>Although the victim's driving may have contributed to the crash, the victim's driving was no more than mere negligence, which was reasonably foreseeable under the circumstances. Therefore, the evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that Bass's acts were a proximate cause of the victim's death. *See People v. Bailey*, 451 Mich. 657, 676-677, amended 453 Mich 1204 (1996).

*People v. Bass*, 2010 WL 1817362 (Mich. App. May 6, 2010, *1-2).

The Michigan Court of Appeals recited the correct governing constitutional standard in discussing Petitioner's claim, and its conclusion that sufficient evidence was presented at trial to sustain Petitioner's convictions was reasonable.

The evidence showed that Petitioner and his accomplice attempted to rob the victim as he sat in his car. When the victim resisted, the perpetrators began firing handguns at him, striking him twice in the leg. In light of this evidence, a rational fact-finder could find beyond a reasonable doubt that the victim, in fear for his life, would attempt to flee the scene in his car at a high rate of speed. The victim's reaction to the shooting–driving away at a high rate of speed to escape further harm

or seek medical attention–was reasonably foreseeable. *Derror*, 475 Mich. at 437-438. In addition, as determined by the Michigan Court of Appeals, Singleton's ability to operate his vehicle safely would be impaired by being shot twice as well as by the damage to his windshield. Accordingly, it did not "fall below the threshold of bare rationality" for the jury to conclude that the victim's accident did not constitute a superceding cause of his death. Petitioner is therefore not entitled to habeas relief based on this claim.

**B. Ineffective Assistance of Counsel**

Petitioner next contends that his counsel was ineffective for not presenting a more effective defense that the victim's dangerous driving constituted an intervening cause of death by calling the emergency room physician at trial and requesting an independent autopsy. He also asserts that counsel failed to object to a jury instruction suggesting that the victim died as the result of a gunshot. Respondent asserts that the Michigan Court of Appeals reasonably rejected this claim.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689.

Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*.

The Michigan Court of Appeals denied Petitioner's ineffective-assistance-of-counsel claim as follows:

> Next, Jackson argues that he was denied the effective assistance of counsel by defense counsel's failure to request an independent autopsy and failing to interview and call as a witness the emergency room physician. He contends that these failures resulted in the denial of a substantial defense on the intervening cause

of death. We disagree.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and law. "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v. LeBlanc*, 465 Mich. 575, 579 (2002). We review the factual findings for clear error and the constitutional question de novo. *Id*. However, because there was no hearing pursuant *People v. Ginther*, 390 Mich. 436, 442-444 (1973), our review is limited to mistakes apparent on the record. *People v. Riley*, 468 Mich. 135, 139 (2003).

Under the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, the guaranteed right to counsel encompasses the right to the effective assistance of counsel. *Cline*, 276 Mich. App. at 637. "Effective assistance of counsel is presumed, and defendant bears a heavy burden to prove otherwise." *People v. Dixon*, 263 Mich. App. 393, 396 (2004). To establish the ineffective assistance of counsel, a defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different; and (3) the resultant proceedings were fundamentally unfair or unreliable." *People v. Mesik*, 285 Mich. App. 535, 543 (2009).

Defense counsel has wide discretion regarding matters of trial strategy. *People v. Odom*, 276 Mich. App. 407, 415 (2007). Further, we will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight. *People v. Payne*, 285 Mich. App. 181, 190 (2009). The failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense, *Payne*, 285 Mich. App. at 190. A substantial defense is one that might have made a difference in the outcome of the trial. *In re Ayres*, 239 Mich. App. 8, 22 (1999). That a strategy does not work does not render its use ineffective assistance of counsel. *People v. Petri*, 279 Mich. App. 407, 412 (2008).

Jackson has failed to establish that he was denied a substantial defense regarding an intervening cause of death. First, Jackson does not make an offer of proof regarding what an independent autopsy would show. A defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. *People v. Hoag*, 460 Mich. 1, 6 (1999). Second, even if the emergency room physician would have testified that the car accident injuries were the cause of death, Jackson has failed to establish that this testimony would have made a difference in the outcome because, as we concluded above, Jackson's involvement in the shooting of the victim was the factual and proximate cause of the victim's death. *In re Ayres*, 239 Mich. App. at 22.

Jackson also argues that his counsel was ineffective for failing to object to the trial court's repeated improper instruction to the jury that the cause of the victim's death was a gunshot. We disagree.

Jury instructions must be read as a whole rather than extracted piecemeal to establish error. *People v. Aldrich*, 246 Mich. App. 101, 124 (2001). When instructing the jury in the charges of first degree premeditated murder, felony murder, and second-degree murder, the trial court stated each time:

> First, that the defendant caused the death of [the victim], that is, that [the victim] died as a result of gunshot.

This instruction did not misrepresent to the jury that there was no possibility of another cause of death or instruct the jury to assume that the gunshots were the sole cause of the victim's death. Rather, the instruction properly advised the jury that, in order to convict the defendants, it had to find that the victim's death was caused by the gunshots from Bass and Jackson.

Further, as the prosecution notes, the trial court also gave the instruction from CJI2d 16.15 by stating:

> There must be more than – there may be more than one cause of death in this particular case, as reflected by some of the testimony presented in this particular matter. It is not enough that the defendant's act made it possible for the death to occur. In order to find that the death of [the victim] was caused by the defendant, you must find beyond a reasonable doubt that the death was the natural and necessary result of the defendant's act.

The jury was properly instructed on the intervening cause of death and a review of the jury instructions does not show otherwise. Therefore, because there is no error in the jury instructions, Jackson's claim is meritless and he was not denied the effective assistance of counsel. *People v. Mack*, 265 Mich App 122, 130 (2005).

*Jackson*, 2010 WL 1817362, at *3-4.

The state appellate court reasonably rejected this claim. First, with respect to the causation defense, Petitioner asserts that his counsel should have called the emergency room physician as a witness and requested an independent autopsy. The medical examiner testified that Singleton died from blood loss from the multiple gunshot wounds and injuries from the

-14-

crash. Petitioner has made no offer of proof that the emergency room physician would differ with this opinion. But even setting that aside, it did not really matter whether the gunshot wounds or the car accident caused the victim's death. As explained above, and as found by the Michigan Court of Appeals, the car accident was not a superceding cause of death that shielded Petitioner from criminal liability. It was a natural and foreseeable result of Petitioner's conduct that the victim would quickly flee from the scene in his car and might crash. Therefore, even assuming that the emergency room physician testified that the gunshot wounds were less of a factor than the medical examiner opined, or even if a second autopsy supported that theory, there is not a reasonable probability that the jury would have acquitted Petitioner of murder.

With respect to the jury instruction referring to gunshot wounds as the cause of death, Petitioner simply misreads that instructions in question. The trial court did not instruct the jury that the gunshot wounds were, in fact, the cause of death. Rather, when it instructed the jury on the elements of the offenses, it informed the jury of the findings it would be required to make to determine that the elements were satisfied. For example, the trial court stated: "To prove this charge, the prosecutor must prove. . . . the defendant caused the death of Paul Singleton, that is, that Paul Singleton died as a result of a gunshot." Tr. IV, 14. Accordingly, counsel was not ineffective for failing to object to the jury instructions.

## C. Intent Instruction

Petitioner's next claim asserts that the trial court erroneously instructed the jury regarding the intent element for second-degree murder. Specifically, he asserts that the instruction failed to further define the "intent to do great bodily harm" version of malice.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). To entitle a petitioner to relief, the failure to give an instruction must have rendered the petitioner's trial fundamentally unfair. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72.

The trial court instructed the jury on the requisite mental states for second-degree murder as follows:

> Second, that the defendant has one of the these three states-of-mind: One, that he intended to kill, or two, he had – he intended to do great bodily harm to Paul Singleton, or three, he knowingly created a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of his actions.

Tr. IV, 15.

The court did not define what constituted great bodily harm. Under state law, however, a court is not required to further define this term. *See, e.g., People v. Raymond*, 2000 Mich. App. LEXIS 451 (Mich. Ct. App. Nov. 17, 2000) ("[T]he term 'great bodily harm' is not obscure or difficult to understand."); *People v. Smith*, 2010 Mich. App. LEXIS 431, 4-5 (Mich. Ct. App. Mar. 4, 2010) (No error in failing to define term "great bodily harm" because term is generally familiar to lay persons and is susceptible to ordinary comprehension). This Court agrees. The phrase "great bodily harm" is not difficult to understand. There is nothing fundamentally unfair about trusting the jury to use ordinary judgment in determining what is meant by the phrase. Moreover, the evidence

at trial showed that Petitioner shot into the victim's car several times from close range, striking him in the leg twice. It is doubtful this case turned on a disagreement about whether shooting a handgun at someone multiple times constitutes an intent to cause great bodily harm or some lesser harm. Because the omission of the definition did not render Petitioner's trial fundamentally unfair, this claim is without merit.

### D. Flight Instruction

Petitioner next claims that the trial court erred in instructing the jury that evidence of Petitioner's flight could be used to show his consciousness of guilt.

In Michigan, "evidence of flight is admissible to support an inference of 'consciousness of guilt' and the term 'flight' includes such actions as fleeing the scene of the crime." *People v. Goodin*, 257 Mich. App. 425 (2003) (*citing People v. Coleman*, 210 Mich. App. 1 (Mich. Ct. App. 1995)). Although the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit are skeptical about the probative value of such evidence, *Parker v. Renico*, 506 F.3d 444, 450-51 (6th Cir. 2007), Petitioner admitted that he left he scene of the incident at the gas station.

The trial court, moreover, informed the jury that, although a person may run or hide because of a consciousness of guilt, such evidence does not necessarily prove guilt. The court explained that a person may run or hide "for innocent reasons such as panic, mistake or fear." The trial court instructed the jury to decide whether the evidence of flight was true and, if true, whether it showed that Petitioner had a guilty state of mind. The instruction on flight therefore did not infuse the trial with such unfairness as to deny Petitioner due process of law, and he is not entitled to habeas corpus relief.

-17-

**E. Cumulative Error**

In his final claim, Petitioner alleges that he is entitled to a new trial because the cumulative effect of the above trial errors deprived him of a fair trial and due process of law. On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (*citing Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). Therefore, Petitioner is not entitled to relief on the basis of this claim.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court

will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

Dated: May 6, 2013

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 6, 2013, by electronic and/or ordinary mail and also on Dremaris Jackson #709776, Michigan Reformatory, 1342 West Main Street, Ionia, MI 48846.

s/Barbara Radke
Deputy Clerk